LOWERY v. LOVE

[93 N.C. App. 568 (1989)]

JAMES E. LOWERY v. JAMES F. LOVE, III, LOWERY CHEVROLET, INC.,
ELMER MOORE CHEVROLET, INC.

No. 8820SC750

(Filed 2 May 1989)

1. **Evidence § 15— breach of employment contract—evidence relevant—prejudicial**

   The trial court did not err in an action for breach of an employment contract by refusing to admit evidence regarding the details of plaintiff's 1987 plea of no contest to a charge of possession of a stolen vehicle and statements of what particular vehicles he owned during that time because, although the details may have had some relevance to plaintiff's financial circumstances or for impeaching plaintiff's credibility, they were clearly inadmissible under N.C.G.S. § 8C-1, Rule 403 because their tendency to create unfair prejudice in the minds of the jurors and confusion of the issues clearly outweighed the probative value.

2. **Master and Servant § 10.2— modification of employment contract—issue not submitted—no error**

   The trial court did not err in an action for breach of an employment contract by not submitting an issue as to whether there had been a modification of plaintiff's employment contract where defendants contended that a letter from defendants to plaintiff requesting his resignation and plaintiff's reply agreeing to resign and asking that his group insurance be temporarily kept in force effectively modified the employment contract. Plaintiff was resigning merely because he was being forced to do so; assuming that sufficient evidence of modification existed, there was no error in the lack of an instruction because the first question presented to the jury was whether plaintiff voluntarily resigned and the underlying premise of defendants' modification argument is that plaintiff voluntarily resigned.

APPEAL by defendants from *Helms, William H., Judge*. Judgment entered 19 February 1988 in Superior Court, UNION County. Heard in the Court of Appeals 16 February 1989.

## LOWERY v. LOVE

[93 N.C. App. 568 (1989)]

*Perry and Bundy, by H. Ligon Bundy, for plaintiff-appellee.*

*DeArmon, Burris, Martin & Bryant, by Christian R. Troy and Elizabeth T. Hodges, for defendant-appellants.*

JOHNSON, Judge.

This civil action was instituted by plaintiff-employee, James E. Lowery, on 16 December 1985 seeking damages for the alleged breach of his employment contract by defendant-employers James F. Love, III (Love), Lowery Chevrolet, Inc. (Lowery Chevrolet), and Elmer Moore Chevrolet, Inc. (Elmer Moore Chevrolet). Defendants answered on 5 February 1986 and moved the court to dismiss plaintiff's action for failure to state a claim pursuant to G.S. sec. 1A-1, Rule 12(b)(6). On 20 February, defendants amended their answer to assert a counterclaim against plaintiff for his alleged use of corporate assets. Defendant denied the allegations of the counterclaim in his reply of 3 March.

At the close of all the evidence at the jury trial of this matter, the parties stipulated that the defendants were entitled to recover $1,145.00 on their counterclaim.

These issues were submitted to the jury and answered as follows:

1. Did the Plaintiff voluntarily resign from his employment?

ANSWER: No.

2. Was the discharge of James E. Lowery by Elmer Moore Chevrolet, Inc. without just cause?

ANSWER: Yes.

3. What amount of damages, if any, is James E. Lowery entitled to recover?

ANSWER: $38,872.00.

The damage figure arrived at by the jury credited defendants for amounts already paid under the contract and amounts earned by plaintiff in mitigation of his damages. Judgment was entered on the verdict on 19 February 1988 for $37,727.00, taking into account defendants' counterclaim and interest on the judgment. Defendants gave notice of appeal in open court.

In 1985, plaintiff owned twenty-five percent of the stock in defendant Lowery Chevrolet, an automobile dealership, and also personally held the General Motors franchise. This franchise gave plaintiff the exclusive right to purchase new General Motors products in the area. The remaining seventy-five percent of Lowery Chevrolet was owned by plaintiff's father-in-law, Frank LaPointe. When plaintiff and his wife separated, LaPointe withdrew his financial support and plaintiff found it necessary to seek another investor to purchase Lowery Chevrolet. This need was met when defendant Love purchased LaPointe's interest in the corporation. Plaintiff and defendants, Love and Lowery Chevrolet, also entered into a separate contract on 8 March 1985, which is the subject of this action. In this agreement plaintiff agreed to transfer his twenty-five percent interest in the corporation to Love, and further to resign as owner of the General Motors franchise. In consideration, defendant Love agreed, as majority stockholder, to cause the corporation to hire plaintiff as general manager for a term of eighteen months at a salary of $4,000.00 per month. Subsequent to the signing of this agreement, ownership of the corporation was transferred to Elmer Moore who renamed the dealership Elmer Moore Chevrolet. Elmer Moore Chevrolet admitted in its answer that it assumed the employment contract in question.

Plaintiff testified that he worked as general manager of the car dealership under his employment contract with no problems until 16 July 1985. After that date, transfer of the corporation to Elmer Moore was complete, and plaintiff's relation with him became strained. The new owner made changes in the management of the dealership and, although plaintiff received no complaints on his job performance, he soon found himself stripped of his authority and the duties which he had previously performed as general manager.

In September of 1985, plaintiff received a letter from defendants' attorney terminating his employment with the dealership and requesting a letter of resignation from plaintiff. Plaintiff ignored this letter, but received a second such letter dated 9 October 1985. After this letter, Elmer Moore personally told plaintiff to clear out his desk and leave. Plaintiff did so and upon reaching his home, wrote the following letter dated 24 October 1985 to defendants Love and Elmer Moore Chevrolet:

> Reference to a letter dated October 9, 1985, asking for my letter terminating my employment with your corporation, I

hereby do said. I do, however, feel that I was not given the chance to perform as to the agreement. I would request that my group insurance be kept enforced [sic] until such time as I can acquire coverage for myself and my family.

Moore informed the plaintiff that the above-quoted letter was unacceptable, and presented plaintiff with a document which purported to completely release defendants from liability. Plaintiff refused to sign the release. He received his last salary payment pursuant to his employment agreement on 15 October 1985 and brought this action for breach of the remainder of his contract.

[1] By their first Assignment of Error, defendants contend that the trial court erred in refusing to admit evidence regarding plaintiff's assets which they argue related to mitigation of damages and loss of income. Specifically, defendants refer to statements made by plaintiff on *voir dire* concerning details surrounding his 1987 plea of no contest to a charge of possession of a stolen vehicle and also statements of what particular vehicles he owned during that time. All this information was held inadmissible by the trial court. The fact of plaintiff's conviction of the charge, however, was elicited from him by defense counsel in the presence of the jury.

Defendants are correct in asserting that if an employment contract is breached by an employer, the maximum amount recoverable by the wronged employee is the difference between the amount to be paid under the contract and the amount the employee earned or by reasonable effort could have earned during the period of the contract. *Thomas v. College*, 248 N.C. 609, 104 S.E. 2d 175 (1958). However, the burden is upon the defendant to prove the plaintiff has failed to mitigate his damages. *Distributing Corp. v. Seawell*, 205 N.C. 359, 171 S.E. 354 (1933).

At trial of this matter, plaintiff testified on direct at great length about the businesses at which he sought employment after discharge by the defendants, stating specifically the names of the establishments and the dates on which he applied to them. He also stated the exact amounts of the small sums he earned during the unexpired term of his contract and the approximate amount of unemployment insurance he collected. Plaintiff also explained in detail how he borrowed money on various lines of credit in order to meet his living expenses.

Defense counsel was permitted to cross-examine plaintiff at length about his education, work history, and efforts to minimize his

damages by seeking other employment. Nonetheless, defendants argue that they were deprived of their right to fully cross-examine plaintiff concerning his mitigation of damages and also for purposes of impeaching his credibility by the exclusion of the details surrounding his 1987 conviction. We do not agree.

Not all relevant evidence is admissible. *State v. Knox*, 78 N.C. App. 493, 337 S.E. 2d 154 (1985). Although the details may have had some relevance to plaintiff's financial circumstances, or for impeaching plaintiff's credibility, they were clearly inadmissible under G.S. sec. 8C-1, Rule 403 of the North Carolina Rules of Evidence because their tendency to create unfair prejudice in the minds of the jurors and confusion of the issues clearly outweighed their probative value. Rule 403 provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The details underlying the 1987 charge had nothing to do with plaintiff's dealings with the defendant corporation or with any of the issues in the case *sub judice*. However, there was a distinct possibility that the jury could have understood those details as constituting a criminal act against the corporation, which, under plaintiff's employment contract, would have been grounds for discharging him. In fact, in discussing exclusion of this evidence with the court at trial, defense counsel stated in the presence of the jury, "well, your Honor, I think it is a criminal act against the corporation." Defendants have not pursued this argument on appeal. The excluded evidence would also have had the obvious tendency to prejudice the jurors against plaintiff for acts he committed which were irrelevant to the issues before them.

The decision to exclude evidence pursuant to Rule 403 is a question committed to the sound discretion of the trial court. *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986). On review, that decision will be reversed for abuse of discretion only if defendants demonstrate that the ruling was "manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E. 2d 55, 59 (1986) (citations omitted). We agree with the court's ruling and find no abuse of discretion. This assignment of error is overruled.

[2] Next, defendants argue that the trial court erred in refusing to submit an issue as to whether there had been a modification of plaintiff's employment contract. Defendants contend that their letter of 9 October 1985, requesting that plaintiff tender his resignation, together with plaintiff's above-quoted 24 October 1985 letter, in which plaintiff agreed to resign and asked that his group insurance be temporarily kept in force, effectively modified the employment contract. Defendants did in fact extend plaintiff's insurance which they claim served as consideration for modification. They further argue that if the modification issue had been presented to the jury, it could have concluded that, in modifying the contract, plaintiff voluntarily resigned. In so concluding, defendants argue, the jury could have determined that, pursuant to the original contract, plaintiff would be entitled only to four months' severance pay for voluntary resignation rather than damages for breach. This argument is wholly without merit.

It is well-settled that the trial court must submit to the jury "such issues as are necessary to settle the material controversies raised in the pleadings." *Link v. Link*, 278 N.C. 181, 190, 179 S.E. 2d 697, 702 (1971) (citations omitted). G.S. sec. 1A-1, Rule 49(b) requires that "[i]ssues shall be framed in concise and direct terms, and prolixity and confusion must be avoided by not having too many issues." Further, "[t]he number, form and phraseology of the issues lie within the sound discretion of the trial court, and the issues will not be held for error if they are sufficiently comprehensive to resolve all factual controversies and to enable the court to render judgment fully determining the cause." *Uniform Service v. Bynum International, Inc.*, 304 N.C. 174, 177, 282 S.E. 2d 426, 428 (1981), *quoting Chalmers v. Womack*, 269 N.C. 433, 435-36, 152 S.E. 2d 505, 507 (1967).

In the case at bar, we do not see sufficient evidence of modification to go to the jury, it appearing from the record that plaintiff, in his letter of 24 October 1985, was merely resigning as he was being forced to do. However, assuming *arguendo*, that sufficient evidence of modification did exist, we still find no error in the lack of an instruction since the underlying premise of defendants' modification argument is that the plaintiff voluntarily resigned. That is precisely the first question that was presented to the jury: "Did the Plaintiff voluntarily resign from his employment?" This question was answered in the negative. In responding to the inter-

rogatory, the jury was free to consider the two letters which defendants claim modified the contract.

The issue presented by the trial court was concise, direct, and covered the controversy in question. In answering that the plaintiff did not voluntarily resign, the jury also discounted the notion of an alleged modification of the contract since plaintiff's voluntary resignation was necessarily at the heart of any modification.

We find no error in the judge's refusal to submit an issue dealing specifically with modification, nor do we see any prejudice flowing to defendants as a result.

We find defendants' third Assignment of Error to be meritless and therefore we do not address it.

For all the foregoing reasons, we hold that defendants received a fair trial and we find

No error.

Judges ARNOLD and PHILLIPS concur.